# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

BRYAN WHITLOW,
:
      Petitioner,                                Case No. 1:05-cv-716

:            District Judge Susan J. Dlott
  -vs-                                     Chief Magistrate Judge Michael R. Merz

WARDEN, Lebanon Correctional
  Institution,
:
      Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case was transferred to the undersigned on November 16, 2006, and is ripe for decision. Petitioner, proceeding *pro se* under 28 U.S.C. §2254, pleads the following Grounds for Relief:

> **Ground One:** Conviction obtained by unconstitutional prosecutorial statements during final arguments (intimidating jurors in support of family's of the victim's intimidating juror's)(twice during trial), then further prosecutor utilizing defendant's silence etc. . ., to compel unreliable intimidated guilt verdict, and unfair trial.
>
> **Ground Two:** Conviction obtained by court failure to give sufficient curative instructions (or) a mistrial and or another remmer hearing "AFTER" hearing the unconstitutional (intimidating) improper comments of the prosecutor made during closing arguments, considering two prior remmer hearings requirements mandated court to keep a watchful eye to abort any further intimidation of jurors, therefore, court abused its discretion relating to facts and law, failing to abort an unfair trial after comments on silence, too, etc., et al…
>
> **Ground Three**: Denial of adequate and effective assistant (sic) by

> appellate counsel...
>
> **Ground Four:** Defendant[']s convictions were obtained against the manifest weight of the evidence because there was no physical evidence tying him to the crimes and because the state witnesses were not credible as no one testified to actually witnessing defendant shoot his gun.

(Petition, Doc. No. 1).

On February 17, 2006, Petitioner moved to withdraw Grounds Three and Four without prejudice to their refiling (Doc. No. 7) . On August 14, 2006, Judge Black denied that Motion as to Ground Three, granting Petitioner twenty days in which to show good cause for failure to exhaust his state court remedies on that claim, and recommended that Ground Four be denied for failure to state a claim cognizable in federal habeas corpus (Doc. No. 10). On September 6, 2006, District Judge Dlott adopted Magistrate Judge Black's recommendation that Ground Four be denied(Doc. No. 11), so that the fourth ground for relief is no longer before the Court.

With respect to Ground Three, Petitioner has not responded to Judge Black's order to show cause for failure to exhaust his state court remedies, nor does a review of the record reveal any circumstances which indicate that Petitioner had good cause for his failure to exhaust. Under *Rhines v. Weber*, 544 U.S. 269 (2005), the appropriate course for the Court to take, rather than dismissing the entire Petition because it is "mixed," is to allow Petitioner to dismiss the third Ground for Relief and proceed to considering the remaining grounds. If the Court were to dismiss the entire Petition, Petitioner would be faced with an expired statute of limitations if he attempted to file again. Accordingly, upon reconsideration, Petitioner's Motion to Withdraw Ground Three for Relief is GRANTED.

The Court proceeds, then, to consider the merits of Grounds One and Two for Relief.

Petitioner was indicted by the Hamilton County Grand Jury on one count of murder and six counts of felonious assault; each count in the indictment also carried a firearm specification. The trial jury convicted Petitioner on all counts and he was sentenced to 23 years to life. On appeal, the First District Court of Appeals found the following relevant facts:

> On the evening of September 1, 2002, in the Fairmont area of Hamilton County, there was a barbecue in a park. A fight started on the street near the home of Eddie and Verlene Wilcox. Shots were fired. One woman died and four others were wounded. Whitlow was charged in connection with the shootings.
>
> During Whitlow's trial, the state presented testimony from four eyewitnesses: Antonio Wilcox, Eddie Wilcox, Latoya Andrews, and Andreye Hudson. Antonio Wilcox, testified that a fight started between himself and Andre Summers. Some moments later, his uncle Eddie shot Summers. Then more shots rang out. Antonio testified that he had seen Whitlow in the crowd holding a black semi-automatic handgun at his side, immediately prior to the shootings. Antonio, who had been shot in the ankle, identified Whitlow as the shooter in a photo lineup shown to him several weeks after the shooting, as well as in court.
>
> Eddie Wilcox testified that he saw Whitlow and one other person in the crowd that night carrying a gun, so he went to get his own. When the fight started, Eddie stated, that he fired his gun. He was then hit with shots himself. Eddie testified that he did not actually see Whitlow fire a gun, but he did see him pull his gun down from an extended position and point it in his direction. Eddie testified that when the shooting stopped he had been shot once in each leg and in the stomach; that his wife, Verlene, had been shot in the stomach; that his sister-in-law, Rita Michele Sullivan Walters, had been shot in the chest, and that his nephew Antonio had been shot in the ankle. Eddie testified that after he told his family to get inside their fenced yard, he went into their home and called for emergency assistance. Although Eddie admitted, that he could not identify Whitlow from a photographic lineup police had shown him several weeks after the shooting, he stated that he was positive that Whitlow was the shooter. Eddie further acknowledged that he was remorseful for shooting Summers that night, that he had pleaded guilty to aggravated assault as a result of the shooting and that he had been given probation for his sentence.

Latoya Andrews, a teenager who lived in Fairmont at the time of the shooting testified that she had gone to the park that day, September 1, 2002, and witnessed the fight and the shootings. From her perspective, Antonio had been attacked by a group of young men, including Summers. She saw an "older guy" shoot Summers. She testified that Whitlow, whom she knew from the neighborhood recreation center, began shooting. She testified that the first shot did not hit anyone, but that she then watched as a woman holding a baby fell down, and then "Antonio went down to the ground." She identified Whitlow as the shooter both in a photo array soon after the incident and at trial. During cross-examination, Latoya changed her story and stated that she did not see the shooting. Latoya further admitted that she did not always tell the truth. During redirect, the assistant prosecutor confronted Latoya with her earlier statement in which she had told police that she had seen Whitlow shooting people. She then testified that she did witness the shootings.

Andreye Hudson, another teenager, testified that he was also present during the fighting and the shooting. Hudson testified that he saw Antonio's uncle pull out his gun and shoot Summers. Hudson then testified that he did not know who had fired the other shots because they came from behind him. The state impeached his testimony by introducing a prior statement in which Hudson had named Whitlow as the shooter. Hudson then reluctantly identified Whitlow as the shooter. Hudson admitted that he did not want to testify against his friend. During cross-examination, Hudson stated, among other things, that he gave the police Whitlow's name because he feared he was a suspect in the shootings.

Verlene Wilcox and Sharon Montavon also testified on behalf of the state. Verlene testified that she and her sister, Rita, were getting ready to leave for church when the fight broke out. Verlene testified that she and Rita, who was holding her seven-month-old baby, were walking to Rita's car when she heard her husband telling her to get behind the gate to their yard. She then heard someone yell, "This is our m f'ing turf," which was immediately followed by gunshots. Rita told her that she had been shot and asked Verlene to take the baby. Verlene testified that she managed to take her sister's baby from her, even though she had been shot in the stomach. Verlene then saw her sister point to her chest and fall to the ground. Shortly thereafter, Verlene called 911 and her church. During cross-examination, Verlene admitted that even though she had not seen the shooter that night, she told police that Michale Swan had shot her because of an argument between her granddaughter and Swan earlier that day.

-4-

>Montavon, the director of the Fairmont neighborhood recreation center testified that Whitlow, whom she had earlier befriended, called her during the six-month period that he had eluded police. Whitlow explained to Montavon during one of the phone calls that he just "snapped" after he saw his friend Andre get shot.
>
>The state also presented testimony from Deputy Coroner Dr. Michael Balko, Criminalist Clarence Caesar, and Senior Firearms Examiner William Schrand. Balko performed the postmortem examination of Rita's body. He testified that Rita's death was caused by a "penetrating gunshot wound to the chest with perforation of the right side of the heart and that resulted in massive bleeding into the sac around heart, the pericardio sac, massive bleeding around the chest cavity, and penetration of the right lung." Caesar testified that he had responded to the scene of the shooting to collect evidence and to take photographs. He recovered seven .380-caliber casings in the street, four discharged bullets, and one .25-caliber casing. During a search of Eddie and Verlene's home, he followed a blood trail to the kitchen and located a Raven .25-caliber gun. Schrand examined the .25-caliber pistol, the .25-caliber casing, one .25-caliber bullet from the hospital, seven .380-caliber casings, four discharged .380-caliber bullets, and one .380-caliber bullet recovered during Rita's autopsy. He concluded that the .25-caliber casing and the bullet removed from Summers at the hospital were fired from the .25-caliber Raven pistol. Schrand further concluded that all five .380-caliber bullets were fired from the same .380-caliber automatic firearm.
>
>The defense called Latoshia Andrews as its only witness. Latoshia testified that her older sister, Latoya Andrews was not in the park the night of the shooting. She also testified that Latoya was a pathological liar.

(*State v. Whitlow*, Case No. C-030748 (Ohio App. 1st Dist. 12/31/2005; copy at Ex. E. to Doc. No. 3.)

On appeal represented by new counsel, Petitioner raised four assignments of error:

1. The trial court erred to the prejudice of Defendant-Appellant by failing to grant a mistrial.

2. The trial court erred to the prejudice of Defendant-Appellant by failing to provide a curative instruction to the prosecutorial misconduct in closing argument.

-5-

      3. Trial counsel for Appellant was ineffective.

      4. The trial court erred to the prejudice of Defendant-Appellant because the verdict was against the manifest weight of the evidence.

(Brief of Appellant, Doc. 3, Ex. C).  The appeals court affirmed the conviction.  (*State v. Whitlow*, Case No. C-030748 (Ohio App. 1st Dist. 12/31/2005; copy at Ex. E. to Doc. No. 3.)  Petitioner attempted to appeal to the Ohio Supreme Court, but that court declined jurisdiction.  (Response, Doc. No. 3, at Ex. H.)

**Analysis**

**First Ground for Relief**

In Ground One, Petitioner asserts his conviction should be set aside because it was obtained by prosecutorial misconduct in the closing argument, in particular making comments to intimidate the jury and utilizing Petitioner's silence against him.  Respondent contends that this Ground for Relief is procedurally defaulted because Petitioner's trial counsel made no objection to the asserted misconduct.

      The standard for evaluating a procedural default defense is as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

-6-

*Coleman v. Thompson*, 501 U.S. 722, 749, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *see also Simpson v. Jones,* 238 F. 3rd 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000); *Murray v. Carrier*, 477 U.S. 478, 485, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainright v. Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977). *Wainright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,* 785 F.2d, at 138.

With respect to this claim, which was Petitioner's second assignment of error in the Court of Appeals, that court held:

> In the second assignment of error, Whitlow contends the trial court erred in failing to give a sufficient curative instruction to the jury for allegedly improper statements made by the assistant prosecutor during closing argument. In one statement, the assistant prosecutor commented that the state's evidence was uncontroverted. In another statement, the assistant prosecutor commented, "[T]hose witnesses they came in here and it was good enough to base an arrest on. They were good enough for Juvenile Court; they were good enough for the Grand Jury. But, now, for some reason they are not good enough for you." Defense counsel did not object to either statement. After closing argument, the trial court told the jury that although a case started with an indictment by a grand jury that had nothing to do with the guilt or innocence of the defendant. The jurors were also instructed that anything the attorneys said in closing argument was not evidence, and that they should base their verdict solely on the evidence.
>
> In State v. Carusone, this court explained that "[t]he test for prosecutorial misconduct is whether the prosecutor's remarks were improper, and, if so, whether they prejudicially affected the defendant's substantial rights. . . . Considerable latitude is generally afforded to the prosecutor in presenting closing arguments. . . . The prosecutor's closing argument must be reviewed in its entirety to determine if any remarks were prejudicial. . . . Because Whitlow did not object to the remarks, we must review the alleged misconduct for plain error.
>
> We have reviewed the entire closing argument, including the contested statements. We cannot say the trial court erred in failing to give the jury a curative instruction with respect to the prosecutor's statement that the evidence was "uncontroverted." We have held that

>statements such as this constitute "a permissible comment by the state on the strength of its case, rather than an improper comment on the defendant's silence." While we agree that the assistant prosecutor's comments about the sufficiency of the grand-jury and juvenile court testimony of the state's witnesses were improper and constituted misconduct, they did not rise to the level of plain error. Furthermore, the trial court gave an appropriate curative instruction with respect to these comments. Under these circumstances, we conclude that the comments were not prejudicial . . . .

(State v. Whitlow, at 8-9.)

Petitioner objects very strongly in his Objections to Answer (Doc. No. 5) that the Court of Appeals opinion does not accurately reflect what happened at trial, that his counsel did in fact object to the prosecutor's comments. Based on this position, Judge Black ordered the transcript of the closing arguments and jury instructions filed (Doc. No. 9) and they are now before the Court (Doc. No. 12). The undersigned has reviewed the closing argument and instructions. The transcript reflects that Mr. Kunkel, the assistant county prosecutor, made a comment during his closing argument that the evidence had been good enough for the juvenile court and the grand jury. Judge Nelson *sua sponte* and without objection by Petitioner's trial counsel gave a curative instruction (Trial Transcript, Doc. No. 12, at 814). When asked if he had any objections to that curative instruction, Petitioner's counsel said that he did not, that the judge had adequately dealt with the pont. *Id*. at 815-816.

If the first Ground for Relief is approached from a procedural default perspective, Respondent has sufficiently shown that the claim was defaulted. Ohio has a contemporaneous objection rule, requiring that objections be made at a time when the trial court can correct them. *State v. Glaros*, 170 Ohio St. 471, 166 N.E.2d 379 (1969), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162, 694 N.E.2d 932 (1998). The Court of Appeals relied on

that rule, reviewing this claim only for plain error. Plain error review under Ohio law is not a waiver of the default, but instead an enforcement of the rule. *Hinkle v. Randle,* 271 F. 3rd 239 (6th Cir. 2001), citing *Seymour v. Walker*, 224 F. 3rd 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord, Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003). The contemporaneous objection rule is an adequate and independent state ground of decision. is an adequate and independent state ground. *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Cott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).

Petitioner has not demonstrated either cause and prejudice to excuse the procedural default or actual innocence of the crime. He states that he is actually innocent, but the actual innocence exception to procedural default requires much more than a criminal defendant's mere conclusory statement that he is innocent. To come within the actual innocence exception to the required showing of cause and prejudice with respect to an abuse of the writ, a habeas petitioner or §2255 movant must show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. That is, the petitioner must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt' in the light of the new evidence he or she is tendering. In reaching this conclusion, the habeas court may need to make credibility determinations. *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851, 130 L.Ed.2d 808 (1995), adopting standard from *Murray v. Carrier*, 477 U.S. 478, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986).

Alternatively, if the Court were to reach the merits of the first Ground for Relief, Petitioner would not be entitled to issuance of a writ on this ground. On habeas corpus review, the standard

-10-

to be applied to claims of prosecutorial misconduct is whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process, *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden v. Wainright,* 477 U.S. 168 (1986); *Kincade v. Sparkman*, 175 F.3d 444 (6th Cir. 1999) or whether it was "so egregious as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602 F.2d 117 (6th Cir. 1979); accord *Summitt v. Bordenkircher*, 608 F.2d 247 (6th Cir. 1979), *aff'd sub nom*, *Watkins v. Sowders*, 449 U.S. 341 (1981); *Stumbo v. Seabold*, 704 F.2d 910 (6th Cir. 1983). To decide this question, the court must first decide whether the complained-of conduct was in fact improper. *Frazier v. Huffman*, 343 F.3d 780 (6th Cir. 2003), *citing United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001). A four-factor test is then applicable to any conduct the Court finds inappropriate: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and whether the evidence against the defendant was strong." *Id.* The court must decide whether the prosecutor's statement likely had a bearing on the outcome of the trial in light of the strength of the competent proof of guilt. *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). The court must examine the fairness of the trial, not the culpability of the prosecutor. *Serra v. Michigan Department of Corrections,* 4 F.3d 1348, 1355 (6th Cir. 1993)(quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In *Serra*, the Sixth Circuit identified factors to be weighed in considering prosecutorial misconduct:

> In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

*Id.,* at 1355-56 (quoting *Angel*, 682 F.2d at 608). The misconduct must be so gross as probably to

prejudice the defendant. *Prichett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997), *cert. denied*, 118 S. Ct. 572 (1997); *United States v. Ashworth,* 836 F.2d 260, 267 (6th Cir. 1988).

The Sixth Circuit has recently articulated the relevant standard for habeas claims of prosecutorial misconduct as follows:

> On habeas review, claims of prosecutorial misconduct are reviewed deferentially. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). To be cognizable, the misconduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id*. (citation omitted). Even if the prosecutor's conduct was improper or even "universally condemned," *id*., we can provide relief only if the statements were so flagrant as to render the entire trial fundamentally unfair. Once we find that a statement is improper, four factors are considered in determining whether the impropriety is flagrant: (1) the likelihood that the remarks would mislead the jury or prejudice the accused, (2) whether the remarks were isolated or extensive, (3) whether the remarks were deliberately or accidentally presented to the jury, and (4) whether other evidence against the defendant was substantial. *See Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000). Under [the] AEDPA, this bar is heightened by the deference we give to the . . . [Ohio] Supreme Court's determination of . . . [Petitioner's] prosecutorial-misconduct claims. *See Macias v. Makowski*, 291 F.3d 447, 453-54 (6th Cir. 2002)("If this court were hearing the case on direct appeal, we might have concluded that the prosecutor's comments violated Macias's due process rights. But this case is before us on a petition for a writ of habeas corpus. So the relevant question is not whether the state court's decision was wrong, but whether it was an unreasonable application of clearly established federal law.").

*Bowling v. Parker*, 344 F.3d 487, 512-13 (6th Cir. 2003). Here the comment of the prosecutor about what evidence had satisfied the bindover court and the grand jury was improper, but it was isolated and quickly corrected by the trial judge so as to dispel any likely misleading of the jury.

Petitioner also complains that the prosecutor commented on his failure to testify. The prosecution may not comment on a criminal defendant's failure to testify. *Griffin v. California,* 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965). This prohibition applies to indirect as well as

direct comments. *Raper v. Mintzes,* 706 F.2d 161, 164 (6th Cir. 1983). However, there is no *per se* rule that comments on the uncontradicted nature of the evidence violate *Griffin. Raper* at 165 (citing *Butler v. Rose,* 686 F.2d 1163, 1170 (6th Cir. 1982)(en banc). A general reference to the uncontradicted nature of the evidence will not be held to reflect on the defendant's failure to testify when others could have contradicted the evidence; such statements are more objectionable when only the defendant could have contradicted the evidence. *Raper* at 164-65 (citing *United States v. Robinson*, 651 F.2d 1188, 1197 (6th Cir. 1981)).

Because it is both procedurally defaulted and without merit, Petitioner should be denied habeas corpus relief on his first Ground for Relief.

### Second Ground for Relief

Petitioner's second Ground for Relief is very similar to the first. He asserts that the trial court should have given a different curative instruction or declared a mistrial or held another *Remmer* hearing after the prosecutor's closing argument, given that there had been two prior *Remmer* hearings during the trial.

Respondent agrees the Court can reach the merits of this claim, but misconstrues it as raising the same argument Petitioner made in his first assignment of error in the Court of Appeals, to wit, that the trial court abused its discretion in not granting a mistrial after the first two *Remmer* hearings. It is clear from the Petition that Mr. Whitlow is complaining in this Court of the failure of the trial court to (1) give a different curative instruction or (2) declare a mistrial or (3) hold another *Remmer* hearing **after** the prosecutor finished his closing argument. In denying the claim as raised, the Court

of Appeals gives useful background information on the *Remmer* hearings actually held:

> In his first assignment of error, Whitlow argues that the trial court erred in overruling his motion for a mistrial. This assignment is based on two incidents that may have affected the jurors during the trial. The first incident, which took place during a lunch break, involved a physical fight in front of the courthouse between a member of the victim's family and a member of the defendant's family. Immediately upon being notified of the incident, the trial court met with counsel, and they agreed to ask the jurors if any of them had seen or heard of the incident and then to question them individually in chambers with counsel for both sides present. The court asked the jurors not to discuss the incident among themselves. Each juror was called into chambers in turn and questioned by the court. One juror stated that she had witnessed the fight. Four jurors stated they had seen an injured man, whom they recognized from the trial, enter the courthouse, but they stated that they did not know what had happened; and some jurors stated they had only heard about the incident from other jurors. All the jurors said that any knowledge of the incident would not affect their duties as jurors and would not bias them toward either side. Some jurors expressed a desire for more security, and the court promised that a deputy would now escort them inside the court hours. The trial court told the jurors they were not to discuss the incident particularly amongst themselves. The trial court, at the behest of both parties, re-questioned the juror, who had witnessed the altercation to determine if she wanted to be removed from the jury. The juror stated that she did not and assured the trial court that the incident would not affect her ability to be fair and impartial. Both the state and the defense appeared satisfied with the handling of the incident, so the trial proceeded.
> A second incident occurred after the court was concluded that same day. Two jurors were waiting for a ride on a bench outside the courthouse when some young men, who had been present at the trial approached them. The jurors stated that the men tried to intimidate them by talking loudly to each other about the lunch incident and that their conversation was clearly meant for them. The following morning, the two jurors brought the incident to the court's attention. The court immediately called the two jurors into chambers with counsel present and questioned them about the incident. One juror stated that she did not hear what the men had said. Neither juror knew which side the young men were associated with. Both jurors said they could continue to serve in a fair manner and would have no bias toward either side. They did request additional security, and the trial court said that a deputy not only would be with them inside the

-14-

> courthouse, but would also escort them to their cars in the evening. At that point, defense counsel asked for a brief recess to consult with Whitlow. When defense Counsel returned he informed the court that his client wanted a mistrial. The trial court overruled the motion. Whitlow argues that seven jurors had knowledge of the incident at lunch and two were present for the later incident after court, and that the cumulative effect of these incidents compromised their fairness and impartiality. In State v. Philips, the Ohio Supreme Court held, "When a trial court learns of an improper outside communication with a juror, it must hold a hearing to determine whether the communication biased the juror . . . . 'in a criminal case, any private communication * * * with a juror during a trial about the matter pending before the jury, is for obvious reasons, deemed presumptively prejudicial * * *. The burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.' . . . The Sixth Circuit, however, has held that the defense must prove that the juror has been biased. . . . In cases involving outside influences on jurors, trial courts are granted broad discretion in dealing with the contact and determining whether to declare a mistrial or to replace an affected juror. . . ."
>
> In this case, the trial court spoke individually to the twelve jurors after the first incident, and to the two affected jurors after the second incident. Counsel for both sides were present during this question. All of the jurors interviewed stated that they could be fair and impartial for the remainder of the trial and would harbor no bias against either side. In view of the excellent way the trial court handled a difficult situation, we cannot say that it abused its discretion in overruling the motion for a mistrial.

(State v. Whitlow, Response to Petition, Doc. No. 3, Exhibit E at 6-8.)

Any private communication or contact with the jury is presumed prejudicial. If it is alleged that such contact happened, the court must conduct a hearing to determine whether the contact was harmless. *Remmer v. United States*, 347 U.S. 227, 76 S. Ct. 425, 100 L. Ed. 435 (1954); *United States v. Rigsby*, 45 F.3d 120 (6th Cir. 1995).

While it would be possible to decide Petitioner's Second Ground for Relief on the procedural basis that he never presented it to the state courts, it is clear that it is without merit and no further

exhaustion should be required. In the first place, a *Remmer* hearing is thus named after the leading Supreme Court case requiring it. Obviously, a prosecutor's closing argument is not a private communication, so no *Remmer* hearing was required after closing argument. Second, there was no motion for mistrial after the closing argument, so Petitioner cannot complain at this stage of the failure to grant a mistrial. Finally, Petitioner does not suggest what more Judge Nelson should have done by way of a curative instruction than he did. He plainly told the jury that what happened at the grand jury was irrelevant and should not be considered by them.

Since Petitioner's Second Ground for Relief is without merit, it should be denied.

## Conclusion

The Petition for Writ of Habeas Corpus should be denied. Since reasonable jurists would not disagree with this conclusion, Petitioner should be denied the right to appeal *in forma pauperis* and any requested certificate of appealability.

November 27, 2006.

s/ Michael R. Merz
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part

upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

H:\DOCS\Whitlow v. Warden R&R.wpd